1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DE JESUS MORALES ASCENCIO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 17-4204-KK<br><br>MEMORANDUM AND ORDER |

  Plaintiff Jose De Jesus Morales Ascencio ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

# I.
# PROCEDURAL HISTORY

On November 13, 2013, Plaintiff filed an application for SSI, alleging a disability onset date of January 1, 2009. Administrative Record ("AR") at 179-84. Plaintiff's application was denied initially on May 14, 2014 and upon reconsideration on August 12, 2014. Id. at 54-86, 91-94, 96-100. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). See id. at 103-05. On February 3, 2016, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 40-53. A medical expert and a vocational expert also testified at the hearing. Id. at 43-45, 51-52. On March 10, 2016, the ALJ issued a decision denying Plaintiff's application for SSI. Id. at 17-33.

Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 16. On April 17, 2017, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On June 6, 2017, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on February 22, 2018. Dkt. 21, JS.

# II.
# PLAINTIFF'S BACKGROUND

Plaintiff was born on August 1, 1967, and his alleged disability onset date is January 1, 2009. AR at 45. He was forty-one years old on the alleged disability onset date and forty-eight years old at the time of the hearings before the ALJ. Id. at 45. Plaintiff attended school in Mexico and, although he took online courses to obtain a high school diploma, he did not finish. Id. at 45-46. Plaintiff alleges disability based on nerve damage and pain resulting from a knife attack, diabetes, high blood pressure, vision problems, post-traumatic stress disorder, and major depression. Id. at 49-50, 54-55, 71.

# III.
# **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.  STEP ONE**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since November 13, 2013, the application date." AR at 25.

**B.  STEP TWO**

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: depression and anxiety." Id.

**C.  STEP THREE**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 28.

**D.  RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: [Plaintiff] can communicate in at

least basic English; he is limited to simple routine tasks and moderately complex tasks of up to SVP 3 to 4[2]; he is precluded from jobs involving hypervigilance; he should not be in charge of safety operations of others; he can have superficial contacts with supervisors and the public but should not be subjected to intrusive supervision.

Id. at 29.

**E.    STEP FOUR**

At step four, the ALJ found Plaintiff is "has no past relevant work." Id. at 32.

**F.    STEP FIVE**

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents one disputed issue: whether the ALJ fully and fairly developed the record.

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based

---

[2] One feature of the Dictionary of Occupational Titles ("DOT") is to assign to each job a number that reflects its specific vocational preparation ("SVP") time, i.e., how long it generally takes to learn the job. DOT, Appx. C. "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Social Security Ruling 00–4p, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000).

on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'" (citation omitted)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

///
///
///
///
///

# VII.
# DISCUSSION
# THE ALJ FAILED TO PROPERLY DEVELOP THE RECORD

**A. BACKGROUND**

Plaintiff has alleged mental health symptoms resulting from a knife attack he sustained in 2008. AR at 330, 334, 336, 364, 770.

In a 2008 consultative psychological examination report, authored long before Plaintiff's current application, the consultative psychologist diagnosed Plaintiff with adjustment disorder with depressed mood. Id. at 325. The consultative examiner found that Plaintiff could understand, remember, and carry out simple and repetitive instructions, but "would have difficulty with pace in most types of positions." Id. at 325.

Plaintiff began receiving routine mental health treatment at Pacific Clinics in September 2013 and this treatment continued at least until February 2016. Id. at 330, 442, 764, 769. The records from this treatment are somewhat limited. However, it is clear that Plaintiff's treating psychiatrist diagnosed him with post-traumatic stress disorder and major depression, documented his ongoing mental health symptoms, and treated him with medications. Id. at 330, 333-37, 339-45, 436, 442-45, 764-68, 770, 773-74, 776. On May 18, 2015, Plaintiff's treating psychiatrist completed a mental residual functional capacity assessment. Id. at 742-43. In that assessment, the doctor states that Plaintiff is unable to meet competitive standards in the areas of maintaining attention for two-hour segments, maintaining regular attendance and punctuality, completing a normal workday and workweek, performing at a consistent pace, and understanding and remembering detailed instructions. Id. The doctor further found that Plaintiff was seriously limited in the areas of remembering work-like procedures, carrying out short simple instructions, sustaining an ordinary routine without special supervision, working in coordination with or in close proximity to others, getting along with coworkers and

peers without distracting them, responding to changes in workplace routine, being aware of hazards and taking precautions, carrying out detailed instructions, setting realistic goals and making independent plans, dealing with workplace stress, adhering to basic standards of neatness and cleanliness, and travelling in unfamiliar places. Id. Finally, on November 2, 2015, Plaintiff's treating psychiatrist authored a letter stating that Plaintiff suffers from severe chronic post-traumatic stress disorder and depression. Id. at 741. Plaintiff's psychiatrist further stated that Plaintiff's symptoms limit his ability to function and employment was not recommended. Id.

Additional notations of depressive symptoms; diagnoses of anxiety, depression, and post-traumatic stress disorder; and prescriptions for psychotropic medications appear throughout the treatment notes from Plaintiff's general practitioners. See, e.g., id. at 364-66, 368, 371, 373-74, 378, 385-86, 388, 471-74, 514-15, 520, 543-44, 554-55, 562, 740.

On initial review and reconsideration of Plaintiff's application for SSI benefits, agency non-examining physicians determined that Plaintiff was moderately limited in his ability to maintain social functioning, concentration persistence, and pace. Id. at 63, 65, 80. The agency physicians also concluded that Plaintiff was moderately limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, interact appropriately with the public and accept instructions from supervisors, respond appropriately to changes in the work setting, set realistic goals, and make plans independently. Id. at 65-66, 81-83.

Despite Plaintiff's ongoing mental health history, the ALJ did not order a new consultative psychological examination or call a mental health expert at the hearing. In her decision, the ALJ found Plaintiff suffered from the severe impairments of depression and anxiety. Id. at 25. The ALJ concluded, however, that Plaintiff maintained the capacity to perform simple routine tasks and

8

1 moderately complex tasks of up to SVP 3 to 4, but could not stay hypervigilant, be
2 in charge of safety operations of others, or have more than superficial contact with
3 supervisors and the public. Id. at 29.

**B.  LEGAL STANDARD**

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)) (noting ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel). Where the claimant may be mentally ill, the ALJ's duty to develop the record is "heightened." Id. (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)). Indeed, the governing statute provides that, in any case where there is evidence indicating the existence of a mental impairment, a finding of non-disability shall be made only if the ALJ has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment. 42 U.S.C. § 421(h).

**C.  ANALYSIS**

Here, the ALJ noted that Plaintiff's mental health records were limited. AR at 30, 31.[3]  This lack of mental health evidence appears to be because the record

---

[3] The ALJ purportedly used the limited mental health records as evidence that Plaintiff's condition was not disabling. AR at 30, 31. However, this was an improper basis for the ALJ's disability determination. Regenitter v. Comm'r, Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (noting the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'"). Moreover, as explained below, the mental health records appear to be incomplete and, thus, the evidence does not support the ALJ's conclusion that the limited records are evidence of non-disability.

9

before the ALJ was incomplete. While the record does not contain treatment notes from Plaintiff's mental health providers for a substantial period of time, mostly for the year 2014, the record references Plaintiff's continued mental health treatment during this time. For example, in January and March 2014, Plaintiff's general practitioner noted Plaintiff was seeing a mental health provider, id. at 433, 436, and Plaintiff continued on medication for his psychological symptoms during the 2014 period, id. at 484-85, 488, 490, 492. Similarly, Plaintiff's treating psychiatrist noted in 2015 that Plaintiff received a psychiatric re-assessment on August 25, 2014. Id. at 770. Yet, records from that time period are lacking from the record before the ALJ and this Court. Plaintiff's counsel also suggested at the ALJ hearing that he was having difficulty obtaining all of Plaintiff's mental health records from Plaintiff's treating psychiatrist. Id. at 50. This apparent incomplete mental health record supports a finding that the record was inadequate to properly assess Plaintiff's mental health limitations.

The inadequacy of the mental health record triggered the ALJ's duty to develop the record. Instead, the ALJ failed to order a consultative psychiatric or psychological examination, or seek to obtain the missing records. Significantly, the ALJ did not order the testimony of a mental health expert, instead calling an internist as the sole medical expert at the hearing. Under these circumstances, the ALJ failed her obligation to develop the record and resolve the uncertainty in this case. See Hilliard v. Barnhart, 442 F.Supp.2d 813, 817 (N.D. Cal. 2006) (remanding for further development of record even though claimant failed to provide objective medical evidence of his psychological impairment because he had "raised a suspicion concerning his alleged cognitive impairment," and the record evidence was inadequate).

///

///

///

# VIII.
# RELIEF

## A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

## B. ANALYSIS

In this case, the record has not been fully developed. On remand, in order to fully develop the record, the ALJ shall assist in securing all of Plaintiff's available mental health records, and, if necessary, order Plaintiff undergo a consultative psychological or psychiatric examination and secure the testimony of a mental health expert. Accordingly, remand for further proceedings is appropriate.

///
///
///
///
///
///
///

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: March 19, 2018

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge